UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

SCHUYLKILL VALLEY SPORTS, INC.,        :
                      Plaintiff,        :
                                        :
           v.                           :        No. 5:20-cv-02332
                                        :
CORPORATE IMAGES CO.;[1]                :
REENIE RICH, INC.; RICH MCGINNIS;       :
and PHIL SNYDER,                        :
                      Defendants.        :

_____

**O P I N I O N**
**Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary**
**Injunction, ECF No. 3 - Denied without prejudice**
**Plaintiff's Motion for Expedited Discovery, ECF No. 4 - Denied**

**Joseph F. Leeson, Jr.**                                    **June 15, 2020**
**United States District Judge**


I.      **INTRODUCTION**

        Plaintiff Schuylkill Valley Sports ("SV Sports") initiated this action against its former

employee Phil Snyder and Snyder's current employer Corporate Images ("CI").[2] The Complaint

claims Defendants engaged in unfair competition by raiding SV Sports employees, who had

signed non-compete agreements and employment handbooks prohibiting outside work,

misappropriated trade secrets/confidential information regarding customer lists, and violated

several other related state laws, including breach of contract. SV Sports has filed a Motion for a

Temporary Restraining Order ("TRO") and Preliminary Injunctive Relief and a Motion to

---

[1]      Defendant Corporate Images is improperly identified as "Corporate Images Co."
[2]      CI is a "division" of Defendant Reenie Rich, Inc. Defendant Rich McGinnis is the
President of CI and Reenie Rich. For purposes of this Opinion, the Court refers to only "CI" as
Snyder's new employer, but this reference is not intended to exclude McGinnis or Reenie Rich.

Expedite Discovery, which Defendants oppose.  For the reasons set forth below, a hearing on the motion for a preliminary injunction is unnecessary and SV Sports' motions are denied.

## II.     PROCEDURAL BACKGROUND

SV Sports filed a Verified Complaint asserting the following claims: (i) unfair competition; (ii) misappropriation of trade secrets/confidential information under the Defend Trade Secrets Act of 2016 (DTSA), 18 U.S.C. § 1836 *et seq.*; (iii) misappropriation of trade secrets under the Pennsylvania Uniform Trade Secrets Act (PUTSA), 12 Pa. C. S. § 5301 *et seq.*; (iv) unjust enrichment; (v) tortious interference with business and contractual relationships; (vi) breach of fiduciary duty/duty of loyalty; (vii) breach of contract; and (viii) civil conspiracy.

The same day, SV Sports also filed a Motion for a Temporary Restraining Order and Preliminary Injunctive Relief and a Motion to Expedite Discovery.  In the Motion for a Temporary Restraining Order and Preliminary Injunctive Relief, SV Sports seeks to: (1) enjoin Snyder from working for CI or any affiliated entity "within twenty-five (25) miles of any SV Sports location and competes directly with SV Sports, from now and through and including a period of one (1) year after final disposition of this matter, including exhaustion of any and all appeals;" (2) enjoin CI, Reenie Rich, and McGinnis from employing Snyder or any other member of the SV Sports Sales Team "from now and through and including a period of one (1) year after final disposition of this matter, including exhaustion of any and all appeals;" (3) enjoin Defendants from soliciting or recruiting any other member of the SV Sports Sales Team to enter into any employment relationship with CI or any affiliated entity "from now and through and including a period of one (1) year after final disposition of this matter, including exhaustion of any and all appeals;" (4) enjoin Defendants from soliciting, distributing, offering to sell, or selling any products or services to SV Sports customers; (5) enjoin CI from divulging any trade

secrets, proprietary information, or confidential business information belonging to SV Sports; (6) direct CI to immediately return to SV Sports any confidential and proprietary information of SV Sports.  *See* PI Mot., ECF No. 3.

In its Motion to Expedite Discovery, SV Sports argues expedited discovery "will not only enable SV Sports to streamline its presentation at the preliminary injunction hearing, but it will enable SV Sports to determine the full extent of Defendants' unlawful conduct."  SV Sports requests expedited discovery of:

> information and documents: (1) referring or relating to the hiring and/or employment of Snyder or any member of the SV Sports Team Sales Force by Corporate Images; (2) referring or relating to the scope of Snyder's job responsibilities, or any member of the SV Sports Team Sales Force's job responsibilities, at Corporate Images; (3) provided by Snyder or any member of the SV Sports Team Sales Force to Corporate Images, Reenie Rich, or McGinnis since March 1, 2020; and (4) containing any confidential and proprietary information of SV Sports. SV Sports also seeks copies of communications to/from to Snyder or any member of the SV Sports Team Sales Force to/from Corporate Images, Reenie Rich, or McGinnis since March 1, 2020, and communications to/from Snyder to/from any member of the SV Sports Team Sales Force since March 1, 2020. After receiving such documents and materials, SV Sports requests permission to depose Snyder and McGinnis, and a corporate representative of Corporate Images and Reenie Rich.

Disc. Mot. ¶ 9, ECF No. 4.  SV Sports asserts this request is "narrowly tailored to seek information that would be used at the hearing and in support of SV Sports' Motion for Preliminary Injunction."  *Id.*

The next day, this Court entered an Order directing that responses to the motions be filed by the end of the week.  Defendants opposed the motions.  After review of the responses and reply thereto, the Court scheduled a telephone conference for May 28, 2020.  During the telephone conference, the Court asked the parties what evidence they intended to present at a preliminary injunction hearing.  SV Sports responded that it did not have any evidence at this time, but hoped to present evidence acquired from expedited discovery.  Defendants stated that

they did not have any evidence to present at a hearing.  Thus, it appearing that a hearing would be unnecessary, the Court allowed the parties to file any supplemental evidence and sur-reply briefs.

The Court makes the following findings of fact and conclusions of law.  *See* Fed. R. Civ. P. 52(a) (providing that in granting or denying a preliminary interlocutory injunction, "the court must find the facts specially and state its conclusions of law separately").

## III.    FINDINGS OF FACT[3]

SV Sports is a sporting goods retailer and athletic team supplier.  As one of the largest team sports suppliers in eastern Pennsylvania, it operates approximately a dozen store locations and maintains an extensive online retail business.  SV Sports sells athletic equipment, sporting goods, sports gear for a vast array of sports, individual and team sportswear, and related items.  It also provides customized screen-printing and embroidering of apparel and promotional items.

CI is a design firm, located in Allentown, Pennsylvania, specializing in screen-printing and embroidery.  CI mainly serves corporate clients and has minimal presence within the team sports uniform market in eastern Pennsylvania.  However, because it produces school spirit apparel and assists schools and booster clubs to set up web stores selling spirit wear, it shares some customers (i.e. schools) with SV Sports.  SV Sports and CI are competitors in this aspect.

Phil Snyder began working for SV Sports in 1989.  During his employment, Snyder served as store manager, team sales representative, Vice President of Team Sales, and manager of Team Sales Development, which is the position he held at the time of his termination.  As manager of Team Sales Development, Snyder was in charge of a new Team Sales Development

---

[3]      The findings of fact are based on undisputed factual allegations in the Complaint, motions, and briefs.  The exhibits attached thereto, to the extent they do not depend on credibility assessments, also form the basis of the findings of fact.

Program with responsibility over developing the SV Sports Team Sales Force. The SV Sports

Sales Team was responsible for team sales on behalf of SV Sports and had responsibilities over

multiple areas, including but not limited to Allentown and surrounding areas.

Snyder and all SV Sports Sales Team employees executed virtually identical agreements

with SV Sports containing non-competition and non-solicitation clauses (as to customers and

employees[4]). The agreements are attached as an exhibit to the Complaint. The non-competition

and non-solicitation clauses apply for "a period of 1 year after the employee is no longer

employed by the Company." *See* Exs. A-B, ECF No. 1-4, 1-5. The last paragraph in the

agreements explain:

> "Employee is no longer employed by the Company" is defined as:
> 1.     Employee chooses to resign position.
> 2.     Employee is terminated for "just cause".
> This agreement would not apply in situations where, through no fault of the
> Employee, the position is eliminated or the location and/or the Company ceased to
> do business.

*See id.* Snyder did not execute the agreement at the time he accepted employment; rather, the

first such agreement was signed in 2005, approximately sixteen years after he began working for

SV Sports. This is also true for some of the other SV Sports Sales Team employees.

Snyder and each member of the SV Sports Sales Team also signed a Company handbook,

the 2020 version[5] which includes a non-solicitation and a confidentiality provision prohibiting

the disclosure of SV Sports trade secrets. The Handbook is an exhibit to the Complaint. *See* SV

Sports Employee Handbook, Ex. E, ECF No. 1-8. The non-solicitation restrictions are limited to

the employee's working hours. *See* § 6.11 ("You are prohibited from soliciting other employees

---

[4]     The non-solicitation clause applies to "any other employee who works for or is affiliated with the Company." *See id.*

[5]     There is no information as to whether earlier versions of the Handbook contained identical provisions. However, this issue is not dispositive of the instant motions.

during your assigned working time.").  The Handbook also states that "[o]utside employment that creates a conflict of interest or that affects the quality or value of your work performance or availability at Schuylkill Valley Sports is prohibited."  *Id.* § 5.2.  The confidentiality provisions of the Handbook provide:

> As a condition of employment, Schuylkill Valley Sports employees are required to protect the confidentiality of SVS trade secrets, proprietary information, and confidential commercially-sensitive information (i.e. financial or sales records/reports, marketing or business strategies/plans, product development, customer lists, patents, trademarks, etc.) related to the company. Access to this information should be limited to a "need to know" basis and should not be used for personal benefit, disclosed, or released without prior authorization from management.

*Id.* § 9.1.  The SV Sports Employee Handbook states: "Nothing in this handbook or any other SVS document should be understood as creating a contract. . . ."  *See id.* § 2.3.

In late March 2020, SV Sports sent a letter to many of its employees, including Snyder and members of the SV Sports Sales Team.  The letter, from Jason Lutz, President/CEO of SV Sports, states that "as of March 30th, SV Sports will be implementing a company-wide layoff. With the everyday uncertainty of Covid-19[6] and state employment restrictions, we feel it necessary to reduce our operating staff to a minimal SWAT team."  *See* Exs. 1 and 2, ECF No. 35-1.  The letter explains,

> While being laid off, you will be able to collect unemployment during this time period. For those of you that are enrolled in our health insurance, you will continue

---

[6]      On March 6, 2020, the Governor of the Commonwealth of Pennsylvania proclaimed the existence of a disaster emergency throughout the Commonwealth pursuant to 35 Pa. C.S. § 7301(c) based on the novel coronavirus ("COVID-19").  A few days later, the World Health Organization announced that the COVID-19 outbreak can be characterized as a pandemic, as the rates of infection continue to rise in many locations around the world and across the United States.  On March 13, 2020, the President of the United States declared that the COVID-19 outbreak constitutes a national emergency under the National Emergencies Act, 50 U.S.C. § 1601 *et seq.*  The Governor of the Commonwealth of Pennsylvania, on March 19, 2020, ordered the closure of all non-life sustaining businesses.  By April 1, 2020, the entire Commonwealth of Pennsylvania was under a stay-at-home order.

> to be covered through the month of April without having to enroll and pay for
> Cobra. Depending on how long the situation lasts, we will revisit this in late April
> to determine if the company will continue to pay for your premiums or whether you
> will need to be enrolled in Cobra.[7]

*See id.*  The letter further provides, "You will be required to return all company possessions to

SV Sports by Monday, March 30th."  *See id.*  In the letter, SV Sports asks for "a personal email

from everyone so we can continue to keep in communication with you about returning to work or

any other company wide announcements."  *See id.*  SV Sports states it is "going to continue to

monitor the situation daily and adjust as we see fit."  *See id.*  The letter lists Laura Guest, SV

Sports Office Manager, as a point of contact.  *See id.*

     Thereafter, Guest writes, in an email dated March 28, 2020, "There have been questions

as expected. These are questions that we could answer right now. There will be another round

soon."  *See* Ex. 3, ECF No. 35-1.  One of the listed questions is "Will the entire staff be

reinstated when we reopen?," to which Guest responds, ". . . Although we are hopeful to

welcome people back, at this time we are unable to guarantee wages and employment to

everyone."  *See id.*  Similarly, in an email from Lutz to Snyder dated March 29, 2020, Lutz states

that in his "eyes this is a temporary layoff," but he wants "to be careful in guaranteeing

anything" as "it is impossible to say that we will welcome everyone back."  *See* Ex. 4, ECF No.

35-1.

     During this email exchange, Snyder informed Lutz that he thought the long-term

employees in SV Sports' Sales Team deserved a phone call, not simply a letter notifying them

they were being laid-off.  *See id.*  Snyder explains these employees, "who might want to come

back . . . will make other plans because their perception will be that SV Sports doesn't care about

---

[7]     SV Sports did not mail notices under the Consolidated Omnibus Budget Reconciliation
Act ("COBRA") to any of the laid-off employees.

them or want them going forwards." He further states, "for the company's sake it's the prudent

thing to do since any signed team noncompete agreements are null and void given the last

paragraph of those agreements." *See id.*

On March 29, 2020, Snyder sent emails to his soon-to-be former SV Sports customers,

stating:

> Dear Customers and Friends,
>
> With sadness I announce that I have been laid off. We don't know what the future
> will be. It has been wonderful working with all of you.
>
> For now Mark Dagon, cc'd here, will be your contact for current and future orders
> until our society gets back to normal.
>
> I wish all of you great health and a wonderful future. "Thank you" for the many
> years of business and friendship.
>
> Warmest Regards,
> Phil

Ex. G, ECF No. 1-10. Snyder copied these emails to his personal email account. On March 27,

2020, Mike Morris, an SV Sports Sales Team member, forwarded an attachment called "MM

Contacts Spring 2020.ods" to his personal email under the subject "My Customers." *See* Ex. 2,

ECF No. 3-2.

There is no evidence that Morris, Snyder, or any other former SV Sports Team member

subsequently used or disclosed any such customer information, or any confidential information

of SV Sports. There is no evidence that CI, Reenie Rich, Inc., or McGinnis ever requested

customer information or any confidential information of SV Sports.

Also on March 29, 2020, Snyder and members of the SV Sports Sales Team filed claims

for unemployment compensation benefits, citing "lack of work." *See* Ex. 1, ECF No. 35-1.

These applications were sent to SV Sports, with a requested return "within 4 business days," for

information on the employees' last date of work, hours, pay, and related information.  *See id.*

More than a month later, on May 8, 2020, the day after SV Sports learned that Snyder had

obtained employment with CI, SV Sports' payroll manager completed the applications, listing

the reason for separation as "COVID19" and the type of separation as "temporary" with an

"unknown" expected date of recall.  *See id.*

Following his separation from SV Sports, Snyder communicated and accepted

employment with CI.  On April 18, 2020, Snyder, as the Sales Director for CI and Team Sales,

sent an email, copying CI's President, to nine former SV Sports Sales Team members who had

been laid-off, soliciting them to join CI.  *See* Ex. C, ECF No. 1-6.  Snyder, stating "I want you to

know what we are building before you commit," provides a vision of the sales team and sales

territories at CI.  *See id.*  The email does not specifically encourage anyone to contact SV Sports

customers.  *See id.*  Although it states: "as soon as possible we want you to be able to contact

your customers, update them, and begin sales consultations and order processing," *see id.*, CI has

its own customers.  Further, this statement appears under the heading "Timeline" after Snyder

explained that CI is "feverishly working on sales reps agreements, Sports Inc. membership,

supplier relationships, sales support team, production and warehousing floor plans, office

remodel, new phone system, procedures, policies, meeting agendas, system refinements, business

cards, Corporate Images and Team Sales apparel for you, etc, etc, etc."  *See id.*  The email also

contains a separate section called "**What can you do now?" under which the only thing listed is

for the potential CI employees to "email [Snyder] suggestions for groups or categories [so he

can] organize them and make a list of suggested Contact Groups/Labels for all of us to use to set

up group contacts."  *See id.*

SV Sports learned of Snyder's conduct on May 7, 2020.  It thereafter sent Snyder a termination letter and COBRA notice.[8]  Prior to this discovery, Ryan Rittenhouse of SV Sports had sent an email to SV Sports customers, copied to Snyder, introducing himself as the new SV Sports Sales Representative and referring to the "former" SV Sports sales representatives.  *See* Ex. F, ECF No. 25.

SV Sports filed the Complaint and subject motions on May 18, 2020.  After receipt of the pleadings and motions filed by SV Sports, McGinnis sent an email to Snyder and the other former members of the SV Sports Sales Team notifying them of the lawsuit.  *See* Ex. G, ECF No. 25.  The email, dated May 21, 2020, states: "unless or until this is resolved, I am ordering that no actions or communications are to be taken by anyone on behalf of [CI] and no representations can be made on behalf of [CI] to the public and no sales can be conducted."  *See id.*  McGinnis writes: "I feel as though CI has done nothing wrong and engaged you all under the assumption that all were terminated / severed employees available to engage with CI."  *See id.*

## IV.    LEGAL STANDARDS

### A.    Hearing on Temporary Restraining Order / Preliminary Injunction

"The applicable Federal Rule does not make a hearing a prerequisite for ruling on a preliminary injunction."  *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1175 (3d Cir. 1990) (citing Fed. R. Civ. P. 65(a)).  "While an evidentiary hearing is not always required before resolving a preliminary injunction, . . . 'where the motion turns on a disputed factual issue, an evidentiary hearing is ordinarily required.'"  *Arrowpoint Capital Corp. v. Arrowpoint Asset*

---

[8]    Lutz attests that Snyder was terminated on May 18, 2020.  *See* Lutz Aff. ¶ 4, ECF No. 31-1.

*Mgmt., LLC*, 793 F.3d 313, 324 (3d Cir. 2015) (quoting *Kos Pharms., Inc. v. Andrx Corp.*, 369

F.3d 700, 719 n.16 (3d Cir. 2004)).  Circumstances where a hearing is not required include:

> [1] the movant is proceeding on a legal theory which cannot be sustained, because
> then there could be no showing of a likelihood of success on the merits . . .
> [2] the facts are undisputed and the relevant factual issues are resolved[9] . . .
> [3] the movant has not presented a colorable factual basis to support the claim on
> the merits or the contention of irreparable harm.

*Bradley*, 910 F.2d at 1175-76.  Additionally, a hearing may not be required if "the adverse party

has waived its right to a hearing."  *Prof'l Plan Exam'rs, Inc. v. Lefante*, 750 F.2d 282, 288 (3d

Cir. 1984).

### B.      Temporary Restraining Order / Preliminary Injunction[10]

A "preliminary injunction is an extraordinary and drastic remedy, one that should not be

granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v.*

*Armstrong*, 520 U.S. 968, 972 (1997) (internal quotations omitted).  "A plaintiff seeking a

preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to

suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his

favor, and that an injunction is in the public interest."  *Winter v. NRDC, Inc.*, 555 U.S. 7, 20

(2008).  "A plaintiff's failure to establish any element in its favor renders a preliminary

injunction inappropriate."  *Nutrasweet Co. v. Vit-Mar Enters.*, 176 F.3d 151, 153 (3d Cir. 1999).

### C.      Expedited Discovery

The Federal Rules of Civil Procedure contemplate that discovery will begin after the

parties' Rule 26(f) meeting, and offer no guidance on when it is appropriate for courts to

---

9        Under these circumstances, a "decision may be based on affidavits and other
documentary evidence."  *Bradley*, 910 F.2d at 1176.
10       "The standards for a temporary restraining order are the same as those for a preliminary
injunction."  *Bieros v. Nicola*, 857 F. Supp. 445, 446 (E.D. Pa. 1994).

authorize expedited and/or early discovery.  The Third Circuit Court of Appeals has not

announced a standard, but district courts in the Third Circuit have applied two standards for

evaluating such requests: (1) a more stringent injunctive relief standard, and (2) a "good cause"

standard.  *See Bath Auth., LLC v. Anzzi LLC*, No. 18-00834, 2018 U.S. Dist. LEXIS 179754, at

*22 (E.D. Pa. Oct. 19, 2018).  "The prevailing approach in this Circuit is to apply the 'good

cause' or reasonableness standard to resolve motions for expedited discovery."  *See id.* at *22-

23.  This standard "requires the party seeking discovery to show 'good cause' for its motion,

such that the request is 'reasonable' in light of the relevant circumstances."  *Kone Corp. v.*

*Thyssenkrupp USA, Inc.*, No. 11-465-LPS-CJB, 2011 U.S. Dist. LEXIS 109518, at *10 (D. Del.

Sep. 26, 2011).  The court should consider: "(1) the timing and context of the discovery requests,

including whether a preliminary injunction hearing has been scheduled; (2) the scope and

purpose of the requests; and (3) the nature of the burden to the respondent."  *See id.* at *11.

"Where the requests are overly broad and extend beyond the needs of the preliminary injunction,

leave should be denied."  *Chubb INA Holdings, Inc. v. Chang*, No. 16-2354 (FLW)(DEA), 2016

U.S. Dist. LEXIS 82225, at *12 (D.N.J. June 24, 2016).

## V.      CONCLUSIONS OF LAW

### A.      Hearing on Temporary Restraining Order / Preliminary Injunction

An evidentiary hearing is not required in this case because the parties advised the Court

that they have no testimony or evidence to present at a hearing and all parties have been allowed

to submit any documentary evidence in support of/opposition to the motions.  Further, the

documentary evidence, aside from a few of the averments in the affidavits, is not disputed.

Because the affidavits are supported with undisputed documentary evidence, the Court need not

make any credibility determinations to rule on the request for injunctive relief.  This case

generally involves the parties' disagreement, not as to the facts, but as to the assumptions that have been drawn therefrom and to the legal implications thereof.

**B.     Temporary Restraining Order / Preliminary Injunction**

The following conclusions of law, which generally fall into two categories: (1) non-compete and non-solicitation restrictions, and (2) confidentiality requirements, are applicable to multiple counts:

The evidence that has been presented does not support the motion for preliminary injunctive relief.  SV Sports hopes the Court will permit expedited discovery so it can attempt to find evidence to support its request for injunctive relief, but for the reasons discussed in Section C, the motion for expedited discovery is denied.  SV Sports states it "has limited evidence already catching Defendants in the act," *see* Disc. Reply 1-2, ECF No. 28, but relies heavily on a few emails and numerous unsupported factual leaps made therefrom.

First, as it relates to any non-compete and non-solicitation restrictions, SV Sports relies primarily on Snyder's email dated April 18, 2020, to nine former SV Sports Sales Team members.  Although this email is evidence of Snyder's employment with CI and his solicitation of the individuals he worked with on the SV Sports Sales Team, it does not show the impropriety of such conduct.  SV Sports has not shown that Snyder's employment with CI was prohibited or that Defendants' solicitation activities were unlawful.  This is so because Snyder's non-compete agreement did not apply, nor did that of any former SV Sports Sales Team members who was laid-off, and they had no contractual obligations to SV Sports, which had terminated its employment relationships by the time of the solicitation.

As to the non-compete agreements, SV Sports has not established they are enforceable.[11]

The agreement, identical in all cases, explains that it does "not apply in situations where, through

no fault of the Employee, the position is eliminated. . . ."  *See* Ex. A, ECF No. 1-4.  Rather, for

the agreement to bind the Employee's actions, the Employee must have either resigned or been

terminated for "just cause."  *See id.* (defining the term "after the employee is no longer employed

by the Company" as used in the agreement).  "[B]ecause non-competition agreements restrain an

employee's ability to practice his or her chosen trade, they are 'strictly construed against the

employer.'"  *Colorcon, Inc. v. Lewis*, 792 F. Supp. 2d 786, 797 (E.D. Pa. 2011) (quoting *All-Pak,*

*Inc. v. Johnston*, 694 A.2d 347, 351 (Pa. Super. Ct. 1997)).  "'[A]ny ambiguous language in a

contract is construed against the drafter and in favor of the other party if the latter's interpretation

is reasonable.'"  *Colorcon, Inc.*, 792 F. Supp. 2d at 797 (quoting *Sun Co. v. Pa. Tpk. Comm'n*,

708 A.2d 875, 878-79 (Pa. Commw. Ct. 1998)).  *See also Am. Eagle Outfitters v. Lyle & Scott*

*Ltd.*, 584 F.3d 575, 587 (3d Cir. 2009) (holding that where the "'words are clear and

unambiguous,' the intent of the parties must be determined from 'the express language of the

agreement'" (quoting *Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. 1982))).  It is undisputed

---

[11]      "When a non-competition clause is required after an employee has commenced his or her
employment, it is enforceable only if the employee receives 'new' and valuable consideration— . .
. . the mere continuation of the employment relationship at the time of entering into the
restrictive covenant is insufficient to serve as consideration for the new covenant, despite it being
an at-will relationship terminable by either party.'"  *Crump v. MetaSource Acquisitions, LLC*,
373 F. Supp. 3d 540, 548 (E.D. Pa. 2019) (quoting *Socko v. Mid-Atl. Sys. of CPA, Inc.*, 126 A.3d
1266, 1275 (Pa. 2015)).
         Defendants assert that Snyder did not receive valid consideration when required to sign
the non-compete agreement more than fifteen years after he began working for SV Sports.
However, the Court offers no opinion as to whether Snyder's non-compete agreement was
supported by valid consideration.

that Snyder did not resign, nor was he terminated for just cause.[12]  *See id.*  The same is true for the former SV Sports Sales Team members.   Thus, the agreements, as well as the non-competition and non-solicitation clauses contained therein, do not restrict Defendants' activities. *See Pollard v. Autotote, Ltd.*, 852 F.2d 67, 71 (3d Cir. 1988).[13]

        The non-solicitation provision in the SV Sports Handbook, which prohibits employee solicitation only during an employee's working hours, also does not preclude Snyder's solicitation activities.  Further, the former SV Sports Sales Team members and Snyder were under no contractual obligations based on the SV Sports Handbook.  "'[A] handbook, to be construed as a contract, must contain unequivocal provisions that the employer intended to be bound by it and, in fact, renounced the principle of at-will employment.'"  *Harris v. Harley-Davidson Motor Co. Operations, Inc.*, No. 1:09-CV-1449, 2011 U.S. Dist. LEXIS 139091, at *28-29 (M.D. Pa. Sep. 28, 2011) (quoting *Reilly v. Stroehmann Bros. Co.*, 532 A.2d 1212, 1214 (Pa. Super. 1987)).  The SV Sports Handbook, however, reiterates that "employment with Schuylkill Valley Sports is on an 'at-will' basis."  *See* SV Sports Employee Handbook § 2.3. The Handbook further provides that it should not be "understood as creating a contract."  *See id.* Accordingly, the SV Sports Handbook is not a contract.  Moreover, because SV Sports had

---

[12]        SV Sports may allege that it terminated Snyder on May 18, 2020, for just cause once it became aware of his employment for CI, but the evidence shows he was no longer employed by SV Sports at that time as the alleged solicitation and competition had already occurred.

[13]        In *Pollard*, the court considered a forfeiture provision in a deferred compensation management incentive plan.  In the 1971 plan, the "forfeiture-for-competition provision applies only 'in the event that an employee terminates his employment. . . .'"  *See Pollard*, 852 F.2d at 71.  The court held that "[t]he language of that provision is clear and unambiguous."  *See id.*  It determined, "[t]he plain meaning of that term is that the forfeiture provision applies only when the employee acts to end his employment, not when the employer terminates the employment." *See id.*  The court concluded that because the plaintiff "did not resign, but was involuntarily terminated [] without fault, . . . the forfeiture provision in the 1971 plan does not apply."  *See id.*

terminated its employment relationships with Snyder and the former SV Sports Sales Team members, the Handbook's restriction on outside employment did not apply.

Lutz's letter stating that "as of March 30th, SV Sports will be implementing a company-wide layoff," *see* Exs. 1 and 2, ECF No. 35-1, terminated the at-will employment relationships. *See Maloney v. Madrid Motor Corp.*, 122 A.2d 694, 696 (Pa. 1956) (determining that the letter, stating "… we do not wish to continue this agreement, in the future, when it expires next September," gave clear notice of intent to terminate ). This letter was "clear and unambiguous." *See E. Milk Producers Coop. Asso. v. Lehigh Valley Coop. Farmers*, 568 F. Supp. 1205, 1207 (E.D. Pa. 1983) (citing *id.* ("The general rule is that notice for the termination of a contract must be clear and unambiguous, and where the conduct of one having the right to terminate is ambiguous, he will be deemed not to have terminated the contract.")). The clear language of the letter: "lay-off" contradicts SV Sports' allegation that it furloughed Snyder and members of SV Sports Sales Team. The remaining provisions of the letter do not create any ambiguity. The letter states that all laid-off employees had to return all company possessions and no longer had access to their SV Sports' email accounts. SV Sports contends that this was done to ensure the employees did not work while on furlough and cites to its failure to provide termination letters or COBRA notices as evidence of a furlough. However, Lutz's letter was a termination letter and the Court is constrained to find that SV Sports' failure to comply with its own notification requirements under COBRA should override its chosen language: "lay-off." Moreover, at the time of Defendants' alleged improper conduct, the deadline for SV Sports to issue COBRA notices had not yet expired, such that the absence of these notices has little impact. *See* 29 U.S.C. § 1166(a)(2) (providing that "the employer of an employee under a plan must notify the administrator of a qualifying event . . . within 30 days . . . of the date of the qualifying event");

16
061520

29 U.S.C. § 1166(c) and 29 C.F.R. § 2590.606-4(b) (stating that where the employer is also the administrator of the plan, the employer must provide notice "not later than 44 days after . . . the date on which the qualifying event occurred").  Further, even if SV Sports anticipated that the lay-off would be only temporary, it offered no end date for the lay-off and continuously refused to guarantee that anyone would be reinstated.  It therefore left the laid-off employees with no "reasonable expectation of recall."  *See, e.g. NLRB v. Rockwood Energy & Mineral Corp.*, 942 F.2d 169, 175 (3d Cir. 1991) (determining that whether the company engaged in unfair labor practices depended on whether the laid-off employees had a reasonable expectation of recall and continued union representation); *Corbo v. Tompkins Rubber Co.*, No. 00-4665, 2002 U.S. Dist. LEXIS 11830, at *12 (E.D. Pa. Jan. 18, 2002) (explaining that "courts have consistently held that individuals who have been laid off but who harbor reasonable expectations of recall should be counted as employees for purposes of WARN's[14] definition of 'employer'" and describing the factors that may be relevant in determining whether an employee had a reasonable expectation of recall, including "the information communicated by the employer").

Second, as to the use, disclosure, and solicitation of confidential information, SV Sports once again, relies heavily on Snyder's April 18, 2020 email to argue that Snyder, with CI's knowledge, solicited the former SV Sports Sales Team members to use confidential customer lists.  However, Snyder's statement that "as soon as possible we want you to be able to contact your customers" is made under the heading "Timeline," wherein Snyder discusses when the

---

[14]     Under the Worker Adjustment and Retraining Notification Act ("WARN"): "Workers on temporary layoff or on leave who have a reasonable expectation of recall are counted as employees. An employee has a 'reasonable expectation of recall' when he/she understands, through notification or through industry practice, that his/her employment with the employer has been temporarily interrupted and that he/she will be recalled to the same or to a similar job."  20 CFR 639.3

former SV Sports Sales Team members will begin working at CI.  *See* Ex. C, ECF No. 1-6.
There is no evidence to support the suggestion of SV Sports that "your customers" applies to SV
Sports' customers and not to CI's own customers.  The mere fact that Snyder and Morris,
independently, forwarded their customer lists to their personal email accounts prior to their
separation from SV Sports is also insufficient to show that either has used or disclosed, or
intends to use or disclose, this information.  There is also no evidence that any Defendant has
solicited or improperly obtained or used any confidential information belonging to SV Sports.[15]

       The request for injunctive relief is based largely on assumptions that Defendants did
something wrong.  However, "injunctions will not be issued merely to allay the fears and
apprehensions or to soothe the anxieties of the parties. Nor will an injunction be issued to
restrain one from doing what he is not attempting and does not intend to do."  *Cont'l Grp., Inc. v.
Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980) (internal quotations omitted) (vacating
the district court's preliminary injunction to enforce the nondisclosure covenant because the
plaintiff's former employee's employment in the plant of a competitor was not sufficient to pose
a risk that confidential information might be inadvertently disclosed).  For the reasons further
discussed below, SV Sports has not shown that the four elements have been met to permit the
extraordinary remedy of injunctive relief.

              i.     **SV Sports has not shown a likelihood of success on any claim.**

              a.     **Count I- unfair competition/raiding**

---

[15]      In the absence of any evidence that SV Sports' customer lists were improperly disclosed,
used, or obtained, there is no need to address Defendants' argument that the customer lists are
not in fact confidential because the information was previously shared and/or is readily
obtainable from other sources.

"Pennsylvania courts have recognized a cause of action for the common law tort of unfair competition where there is evidence of, among other things, trademark, trade name, and patent rights infringement, misrepresentation, tortious interference with contract, improper inducement of another's employees, and unlawful use of confidential information." *Synthes (USA) v. Globus Med., Inc.*, No. 04-CV-1235, 2005 U.S. Dist. LEXIS 19962, at *24-25 (E.D. Pa. Sep. 14, 2005).

SV Sports premises this Count on Defendants' alleged raiding of SV Sports' employees- "improper inducement of another's employees." However, "the offering of employment to a person under a contract, terminable at the will of either, with another is not actionable in and of itself." *Albee Homes, Inc. v. Caddie Homes, Inc.*, 207 A.2d 768, 771 (Pa. 1965). Because the non-compete agreements are not enforceable, this theory does not support Count I. Further, the "systematic inducing of employe[es] to leave their present employment and take work with another is [only] unlawful when the purpose of such enticement is to cripple and destroy an integral part of a competitive business organization rather than to obtain the services of particularly gifted or skilled employe[es]." *See id.* SV Sports has not shown that Defendants, a much smaller company, had the intent to "cripple and destroy" SV Sports. Rather, the evidence suggests that CI took advantage of the lay offs to obtain a very experienced sales team.

SV Sports has also failed to show "the inducement is made for the purpose of having the employe[es] commit wrongs, such as disclosing their former employer's trade secrets or enticing away his customers." *See id.* SV Sports makes only unsupported factual assumptions and conclusions that Defendants would/did seek disclosures. To the extent the unfair competition claim is based on Defendants' "unlawful use of confidential information," SV Sports has not shown that any Defendant actually used any confidential information or was "likely to misuse

confidential information in order to compete unfairly." *See Armstrong World Indus. v. Sommer Allibert, S.A.*, No. 97-3914, 1997 U.S. Dist. LEXIS 19069, at *50 (E.D. Pa. Nov. 26, 1997).

For all these reasons, and for those discussed in greater detail below with respect to the other counts, SV Sports has not shown a likelihood of success on Count I.

SV Sports' contention that *Morgan's Home Equip. Corp. v. Martucci*, 136 A.2d 838 (Pa. 1957), and *Reading Radio, Inc. v. Fink*, 833 A.2d 199 (Pa. Super. 2003), support its unfair competition claims because they are "directly on point with similar allegations," *see* Disc. Reply 3, ECF No. 31, is meritless. In *Martucci*, the defendants "were given customer data in the course of their employment . . . and *all admit to using and divulging the information subsequently in their rival employment*." *See* 136 A.2d at 843 (emphasis added).  In *Fink*, the defendants, while working for a rival competitor in violation of non-compete agreements, "began to call former advertisement customer accounts held with [the former employer]." *See* 833 A.2d at 212.  Here, SV Sports only assumes confidential information was improperly disclosed and used.

> ### b.    Count II- misappropriation of trade secrets/confidential information under the Defend Trade Secrets Act (DTSA)

"The DTSA defines 'misappropriation' as the 'acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;' or the 'disclosure or use' of a trade secret without the consent of the owner." *Teva Pharm. USA, Inc. v. Sandhu*, 291 F. Supp. 3d 659, 674 (E.D. Pa. 2018) (quoting 18 U.S.C. §§ 1839(5)(A), (B)).

If SV Sports' customer list is a trade secret,[16] SV Sports has not shown that the list was ever used or disclosed.  SV Sports relies solely on the two emails Snyder and Morris sent on the

---

[16]    No determination has been made as to whether the information allegedly misappropriated by Defendants qualifies for trade secret status.  The Third Circuit Court of Appeals has "held that

final days of their employment with SV Sports copying their customer list to the personal email

accounts.  There is no other suggested evidence of misappropriation.[17]  These emails are

insufficient.  *See Freedom Med. Inc. v. Whitman*, 343 F. Supp. 3d 509, 518 (E.D. Pa. 2018)

(concluding that the plaintiff failed to show a likelihood of success on its misappropriate of trade

secrets claim where the only evidence of misappropriation is an email the defendant sent to

himself the day before he left the plaintiff's employ containing the plaintiff's price schedules).

SV Sports has therefore failed to show a likelihood of success on its misappropriation of trade

secrets claim under the DTSA.

> **c.      Count III- misappropriation of trade secrets under the Pennsylvania Uniform Trade Secrets Act (PUTSA)**

"The DTSA and PUTSA define misappropriation as 'acquisition of a trade secret of

another by a person who knows or has reason to know that the trade secret was acquired by

improper means' or the 'disclosure or use of a trade secret of another without express or implied

consent.'"  *Magnesita Refractories Co. v. Tianjin New Century Refractories Co.*, No. 1:17-CV-

1587, 2019 U.S. Dist. LEXIS 32559, at *23 (M.D. Pa. Feb. 28, 2019) (quoting 18 U.S.C. §

---

customer lists are confidential and entitled to protection as trade secrets."  *Feldman v. Cmty. Coll. of Allegheny*, 85 F. App'x 821, 827-28 (3d Cir. 2004).  However, customer lists "cannot be trade secrets if they are easily or readily obtained, without great difficulty, through some independent source other than the trade secret holder."  *BIEC Int'l, Inc. v. Glob. Steel Servs., Ltd.*, 791 F. Supp. 489, 545 (E.D. Pa. 1992) (explaining that "courts have denied protection to customer lists which are easily generated from trade journals, ordinary telephone listings, or an employee's general knowledge of who, in an established industry, is a potential customer for a given product").

[17]     Although SV Sports asserts that the trade secrets / protected confidential information includes "name recognition; reputation; specialized training; customer lists and prospects; customer financial information; referral sources; customer business needs; methods of pricing and cost; pricing information; financial data; sales records and reports; methods of marketing[;] and business strategies," *see* PI Mem. 2-3, ECF No. 3-3, the only alleged evidence of misappropriation is limited to Snyder's and Morris' emails forwarding SV Sports' customer lists to their personal accounts.

1839(5)(A); 12 Pa. Cons. Stat. § 5302).  Under Pennsylvania law, the prima facie elements of the

tort of misappropriation of a trade secret are:

> (1) the existence of a trade secret;
> (2) communication of the trade secret pursuant to a confidential relationship;
> (3) use of the trade secret, in violation of that confidence; and
> (4) harm to the plaintiff.

*Moore v. Kulicke & Soffa Indus.*, 318 F.3d 561, 566 (3d Cir. 2003).

For the reasons set forth regarding the DTSA claim, SV Sports has also failed to show a

likelihood of success on its PUTSA claim, as there is no evidence that the customer lists were

improperly used or disclosed.  *See Almac Clinical Servs., LLC v. Park*, No. 16-4896, 2016 U.S.

Dist. LEXIS 140440, at *25 (E.D. Pa. Oct. 11, 2016) (concluding that the plaintiffs have not

proven likelihood of success on the merits of their PUTSA claim because "the record is devoid

of evidence that any Almac company has suffered damages as a result of [defendant's] actions . .

. of any lost customer, any lost revenue or any lost opportunities").

### d.    Count IV- unjust enrichment

The elements of unjust enrichment are:

> (1) benefits conferred upon defendant by plaintiff;
> (2) appreciation of such benefits by defendant; and
> (3) acceptance and retention of such benefits under such circumstances that it
> would be inequitable for defendant to retain the benefit without payment of value.

*Harry Miller Corp. v. Mancuso Chems. Ltd.*, 469 F. Supp. 2d 303, 319 (E.D. Pa. 2007) (citing

*Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. 1999)).  "[T]he most significant element of

the doctrine is whether the enrichment of the defendant is unjust. The doctrine does not apply

simply because the defendant may have benefited as a result of the actions of the plaintiff."

*Styer v. Hugo*, 619 A.2d 347, 350 (Pa. Super. Ct. 1993).  Rather, "a claimant must show that the

party against whom recovery is sought either 'wrongfully secured or passively received a benefit

that it would be unconscionable for her to retain.'"  *Torchia ex rel. Torchia v. Torchia*, 499 A.2d

581, 582 (Pa. Super. 1985) (quoting *Roman Mosaic & Tile Co. v. Vollrath*, 313 A.2d 305, 307

(Pa. Super. 1973).  *See also Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 492-93 (E.D. Pa.

2016).

    SV Sports alleges that the conferred benefit was confidential information belonging to

SV Sports, disclosed by Snyder to CI.  For all the reasons already discussed there is no evidence

that CI received any confidential information.  SV Sports has failed to show a likelihood of

success on this claim.

> **e.**    **Count V- tortious interference with business and contractual**
> **relationships**

    Under Pennsylvania law, to prevail on a claim for tortious interference with existing or

prospective contractual relationships, a party must prove:

> (1) the existence of a contractual or prospective contractual or economic
> relationship between the plaintiff and a third party;
> (2) purposeful action by the defendant, specifically intended to harm an existing
> relationship or intended to prevent a prospective relation from occurring;
> (3) the absence of privilege or justification on the part of the defendant; [and]
> (4) legal damage to the plaintiff as a result of the defendant's conduct.

*Acumed LLC v. Advanced Surgical Servs.*, 561 F.3d 199, 212 (3d Cir. 2009).  A competitor that

intentionally causes another's employee "'not to continue an existing contract terminable at will

does not interfere improperly with the other's relation if:

> (a) the relation concerns a matter involved in the competition between the actor and
> the other;
> (b) the actor does not employ wrongful means;
> (c) his action does not create or continue an unlawful restraint of trade; and
> (d) his purpose is at least in part to advance his interest in competing with the other.

*Id.* at 215 (quoting section 768 of the Restatement (Second) of Torts).

"An employment contract . . . may be only partially terminable at will. Thus it may leave the employment at the employee's option but provide that he is under a continuing obligation not to engage in competition with his former employer. Under these circumstances a defendant engaged in the same business might induce the employee to quit his job, but he would not be justified in engaging the employee to work for him in an activity that would mean violation of the contract not to compete." *DePuy Synthes Sales, Inc. v. Globus Med., Inc.*, 259 F. Supp. 3d 225, 245 (E.D. Pa. 2017) (quoting Rest. (Second) Torts § 768, cmt. i).  Thus, "the competitor's privilege does not shield a company from tortious interference with an employee bound by a covenant not to compete." *Symphony Health Sols. Corp. v. IMS Health, Inc.*, No. 13-4290, 2014 U.S. Dist. LEXIS 114211, at *4 (E.D. Pa. Aug. 15, 2014) (citing *Fink*, 833 A.2d at 209).

To the extent this claim is based on Defendants' alleged interference with the non-compete agreements, SV Sports has not shown a likelihood of success because the non-compete agreements were not enforceable.  *Accord Acclaim Sys., Inc. v. Infosys, Ltd.*, No. 13-7336, 2015 U.S. Dist. LEXIS 90937 (E.D. Pa. July 14, 2015) (holding that where the former employer alleged that it had valid non-compete agreements with its former employees and the new employer was aware of those agreements but nonetheless acted to hire the former employees to work for a competitor doing the same job, the plaintiff had alleged a plausible claim of tortious interference).

Because the restrictions on outside work in the SV Sports Handbook were not contractual, they may not be the basis for this Count.  Moreover, once the employees were terminated, the restrictions in the Handbook no longer applied.

There are no allegations, or evidence, that any of Defendants' activities occurred prior to SV Sports' mass lay-off; therefore, Defendants did "not employ wrongful means."  In the

absence of an employment relationship, there is no evidence that Defendants acted improperly.

Further, even if SV Sports hoped that the lay-off would only be temporary and that it would be

able to rehire the laid-off employees, it has not shown that it was reasonably likely this would

have occurred.  *See Brokerage Concepts v. United States Healthcare*, 140 F.3d 494, 530 (3d Cir.

1998) (holding that a "plaintiff must prove . . . for prospective contracts, a reasonable likelihood

that the relationship would have occurred but for the interference of the defendant" (citing

*Pelagatti v. Cohen*, 536 A.2d 1337, 1343 (Pa. Super. 1988)).

 Finally, to the extent SV Sports may contend Defendants interfered with SV Sports'

relationships with it customers, SV Sports has offered no evidence of improper action or,

therefore, "the absence of privilege or justification on the part of the defendant."

 Consequently, SV Sports has not shown a likelihood of success on its claim for tortious

interference with business and contractual relationships.

### f. Count VI- breach of fiduciary duty/duty of loyalty

This count is against Snyder only.

"The elements the plaintiff must prove in claim of breach of fiduciary duty are:

> (1) that the defendant negligently or intentionally failed to act in good faith and
> solely for the benefit of plaintiff in all matters for which he or she was employed;
> (2) that the plaintiff suffered injury; and
> (3) that the agent's failure to act solely for the plaintiff's benefit . . . was a real
> factor in bring about plaintiff's injuries.

*McDermott v. Party City Corp.*, 11 F. Supp. 2d 612, 626 n.18 (E.D. Pa. 1998) (internal

quotations omitted).  A claim for breach of the duty of loyalty requires a showing as to these

same three elements, in addition to showing that a fiduciary or confidential relationship existed.

*See Hill v. Best Med. Int'l, Inc.*, No. 07-1709, 2011 U.S. Dist. LEXIS 123845, at *71-72 (W.D.

Pa. Oct. 24, 2011).  "Pennsylvania law dictates that an employee, as the agent of his employer,

owes his employer a duty of loyalty." *Synthes, Inc. v. Emerge Med., Inc.*, 25 F. Supp. 3d 617, 667 (E.D. Pa. 2014).

"[U]nder the law of Pennsylvania[,] employees at will do not breach a fiduciary duty to the employer by making preparations to compete upon termination of employment provided the employee does not use the confidential information of his employer, solicit the customers of his employer, or otherwise engage in conduct directly damaging his employer during the period of employment." *Oestreich v. Envtl. Inks & Coatings Corp.*, No. 89-8907, 1990 U.S. Dist. LEXIS 17243, at *17 (E.D. Pa. Dec. 17, 1990). "Within this framework, an employee may properly inform customers of his current employer that he is leaving the employer to work elsewhere in the field, or to start his own competing business." *Bro-Tech Corp. v. Thermax, Inc.*, 651 F. Supp. 2d 378, 414 (E.D. Pa. 2009) (internal quotation marks omitted). However, "where an employee, bound by a restrictive covenant, makes preparations to compete with his current employer, the employee could be said to have breached his duty of loyalty by seeking employment with admitted competitors of the employer while still employed. . . ." *Synthes, Inc.*, 25 F. Supp. 3d at 667-68.

The only alleged activity Snyder took prior to leaving SV Sports was to send an email to his customers, which he copied to his personal email account, notifying them of his lay-off. This was permissible under Pennsylvania law and did not violate his non-compete agreement. *See Bro-Tech Corp.*, 651 F. Supp. 2d at 414. Despite SV Sports' assumptions, it has not shown that Snyder forwarded the email to his personal account for any improper purpose or used any confidential information. *See Oestreich*, 1990 U.S. Dist. LEXIS 17243, at *17 (finding that the party had not come forward with any facts showing that the employee used any confidential information of the employer, solicited the employer's customers, or engaged in conduct directly

damaging to the employer "during his period of employment"). *Accord AutoTrakk, LLC v. Auto. Leasing Specialists, Inc.*, No. 4:16-CV-01981, 2017 U.S. Dist. LEXIS 106188, at *24-25 (M.D. Pa. July 10, 2017) (determining that the employee's actions before he resigned of "retaining any confidential information for nefarious purposes" benefited the employee to the employer's expense).  There is no evidence that Snyder misappropriated any other allegedly confidential information.  Moreover, because SV Sports has not shown that Snyder intends to disclose any confidential information he gained during his employment and, also, because it terminated its employment relationship with Snyder, there is no ongoing threat of a breach that would warrant injunctive relief.  *See Whitman*, 343 F. Supp. 3d at 530-31 (finding that where the individual defendants had already left the plaintiff's employment, "[t]here is no ongoing or threatened breach of a fiduciary duty," and no preliminary injunction would issue on the breach of fiduciary duty claim); *Cerro Fabricated Prods. LLC v. Solanick*, No. 3:17-CV-02422, 2018 U.S. Dist. LEXIS 39258, at *44-45 (M.D. Pa. Mar. 9, 2018) (concluding that the plaintiff failed to meet its burden of showing a likelihood of success on the merits of its breach of confidentiality agreement claim because the plaintiff's argument, that there was a confidentiality agreement with the defendant, who went to work for a direct competitor in a similar position, and it had been informed that the defendant was using and/or disclosing confidential information, was merely a "brief and generalized assertion").

After March 30, 2020, the effective date of the lay-off, Snyder was free to seek employment with competitors and to solicit the other former members of SV Sports Sales Team who had been laid-off because the non-compete agreements are not enforceable.  The April 18, 2020 email is insufficient to show that Snyder intended to destroy SV Sports' business operations or to divert SV Sports' business relationships.  There is also no evidence to support

SV Sports' allegations that Snyder contacted any SV Sports customers or suppliers.  In the absence of any other evidence, SV Sports has not shown a likelihood of success on its claims for breach of fiduciary duty/duty of loyalty.

g.      **Count VII- breach of contract**

This count is against Snyder only.

SV Sports alleges that Snyder breached contractual and other duties not to disclose confidential information and also breached his non-compete agreement by obtaining outside employment and soliciting SV Sports employees to join CI and to breach their own non-compete agreements and disclose confidential information.  SV Sports asserts that because Snyder was still employed at the time of his breach, all the restrictive covenants apply.

"Under Pennsylvania law, a contract is formed when the parties

(1) reach a mutual understanding,
(2) exchange consideration, and
(3) delineate the terms of the bargain with sufficient clarity.

*Tuff Wrap Installations Inc. v. Cleanwrap, Inc.*, No. 11-2576, 2011 U.S. Dist. LEXIS 70543, at *18 (E.D. Pa. June 29, 2011) (citing *Weavertown Transport Leasing, Inc. v. Moran*, 834 A.2d 1169, 1172 (Pa. Super. 2003)).[18]  "To show a likelihood of success on the merits of its breach of contract claims, [SV Sorts] must establish each of the following elements:

(1) existence of a contract;
(2) that the defendant breached a duty, here, not to compete or disclose confidential information, imposed by that contract; and
(3) damages caused by the breach.

---

[18]      The Court assumes, without deciding, that the non-compete agreement and the restrictive covenants, assuming they were contracts, were supported by adequate consideration.

*Revzip, LLC v. McDonnell*, No. 3:19-cv-191, 2019 U.S. Dist. LEXIS 211836, at *10-11 (W.D. Pa. Dec. 9, 2019) (citing *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016)).

For the reasons previously discussed, Snyder's non-compete agreement is not enforceable and therefore could not have been breached.

As to the restrictive covenants in the SV Sports Handbook, because the Handbook specifically states: "Nothing in this handbook or any other SVS document should be understood as creating a contract. . .," *see* SV Sports Employee Handbook § 2.3, it may not form the basis of the breach of contract claim, *see Caucci v. Prison Health Servs.*, 153 F. Supp. 2d 605, 611 (E.D. Pa. 2001) (holding that "explicit disclaimers of contract formation in an employee handbook preclude a breach of contract claim"). Regardless, because SV Sports had terminated Snyder's employment, the restrictive covenant in the Handbook against outside employment no longer applied. Additionally, as has been explained, there is no evidence of disclosure of any confidential information. *See Cerro Fabricated Prods. LLC*, 2018 U.S. Dist. LEXIS 39258, at *44-45. Accordingly, SV Sports has not shown that Snyder breached any of the provisions therein.

SV Sports has not shown a likelihood of success on its breach of contract claim.

### h.    Count VIII- civil conspiracy

"In Pennsylvania, 'to state a cause of action for civil conspiracy, the following elements are required:

(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose;
(2) an overt act done in pursuance of the common purpose; and
(3) actual legal damage.

*Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003) (quoting

*Strickland v. Univ. of Scranton*, 700 A.2d 979, 987-988 (Pa. Super. Ct. 1997)).  "'[A]bsent a civil

cause of action for a particular act, there can be no cause of action for civil conspiracy to commit

that act.'"  *NSI Nursing Sols., Inc. v. Volume Recruitment Servs., LLC*, No. 17-1613, 2019 U.S.

Dist. LEXIS 17170, at *22 (E.D. Pa. Feb. 4, 2019) (quoting *Pelagatti*, 536 A.2d at 1342).

Because SV Sports cannot show a likelihood of success on the underlying claims, it cannot show

a likelihood of success on its civil conspiracy claim.

Although SV Sports has failed to show the likelihood of success on any claim, the Court

nevertheless considers whether it has shown irreparable harm.

### b.    SV Sports has not shown it will suffer immediate irreparable harm.

"Establishing a risk of irreparable harm is not enough."  *Ecri v. McGraw-Hill, Inc.*, 809

F.2d 223, 226 (3d Cir. 1987).  "The requisite for injunctive relief has been characterized as a

clear showing of immediate irreparable injury, or a presently existing actual threat."  *Cont'l Grp.,*

*Inc.*, 614 F.2d at 359 (internal quotations omitted).  "Issuing a preliminary injunction based only

on a possibility of irreparable harm is inconsistent with [the Court's] characterization of

injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that

the plaintiff is entitled to such relief."  *Winter*, 555 U.S. at 22.  Accordingly, "an injunction[]

may not be used simply to eliminate a possibility of a remote future injury, or a future invasion

of rights, be those rights protected by statute or by the common law."  *Cont'l Grp., Inc.*, 614 F.2d

at 359 (internal quotations omitted).  Further, "there is no presumption of irreparable harm

afforded to parties seeking injunctive relief."  *Ferring Pharm., Inc. v. Watson Pharm., Inc.*, 765

F.3d 205, 216-17 (3d Cir. 2014) (holding that "the logic of *eBay*[19] is not limited to patent cases but rather is widely applicable to various different types of cases" and agreeing with the Second Circuit's decision in *Salinger v. Colting*, 607 F.3d 68, 78 n.7 (2d Cir. 2010), which stated: "[W]e see no reason that *eBay* would not apply with equal force to an injunction in any type of case.").

As previously mentioned, the activity SV Sports seeks to enjoin and the type of harm allegedly resulting therefrom generally falls into two categories: (1) Defendants' solicitation of SV Sports' employees and customers in violation of the non-compete agreements; and (2) Defendants' disclosure or use of SV Sports' confidential information.  Assuming arguendo that the non-compete agreements and other restrictive covenants are enforceable,[20] SV Sports has nevertheless failed to show it will suffer immediate irreparable harm if an injunction in not issued.

First, SV Sports offers mostly conclusory statements about the harm it will suffer if the non-compete agreements are not enforced.  It broadly alleges it may suffer: "potential loss of employees, loss of customers, [] loss of goodwill, . . . may be forced to close several of its offices[, and may have] to breach covenants to senior lenders and risk default."  *See* PI Mem. 3, ECF No. 3-3.  SV Sports has offered no evidence to support these conclusory assumptions.  *See Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 802 (3d Cir. 1989) (finding that the plaintiff's allegations that its "business will be completely destroyed, its employees and jobs will be lost and its goodwill and business reputation will be ruined" if not granted injunctive

---

[19]     *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392-93 (2006) (rejecting the invitation "to replace traditional equitable considerations with a rule that an injunction automatically follows a determination that a copyright has been infringed" because "traditional equitable principles do not permit such broad classifications").

[20]     If the non-compete agreements are not enforceable, as the Court previously concluded, there can be no irreparable harm under the first category.

relief was not supported by any evidence, such as financial statements or projections, and that it was free to secure other business).  SV Sports, citing to two allegations in the Verified Complaint about the percentage of sales Snyder and the SV Sports Team Sales Force were responsible for over the past several years, also makes the unsupported allegation that "Defendants' plan involves the taking of millions of dollars in team sales, historically, and nearly 40% of SV Sports' team sales business."  *See* PI Reply 8, ECF No. 31 (citing Compl. ¶¶ 14-15).  However, because Snyder and the former members of the Sales Team SV Sports had been laid off, they were not making any sales on behalf of SV Sports, and because they were laid-off with no guarantee that any of them would be rehired, there is no evidence that they would ever make profits for SV Sports again.

Further, the fact that Snyder (or any of the former SV Sports Sales Team members) accepted employment with CI, alone, also does not show irreparable harm.  *See CertainTeed Ceilings Corp. v. Aiken*, No. 14-3925, 2014 U.S. Dist. LEXIS 152446, at *38 (E.D. Pa. Oct. 24, 2014) (finding that the fact a former employee took a job with a competing company, on its own, does not irreparably harm the former employer).  There is no evidence that Defendants are soliciting SV Sports customers or have engaged any sales agreements with them.  Further, McGinnis' email dated May 21, 2020, "order[ed] that no actions or communications are to be taken by [Snyder or any of the other former members of the SV Sports Sales Team] on behalf of [CI] and no representations can be made on behalf of [CI] to the public and no sales can be conducted."  *See* Ex. G, ECF No. 25.  *See Revzip, LLC*, 2019 U.S. Dist. LEXIS 211836, at *22-23 (finding that the plaintiff failed to establish likely irreparable harm on its claims relating to violation of the non-compete agreement because, aside from one lost customer, the plaintiff could not establish that it was losing any other customers as a result of the defendants' action and

the defendant testified that he intended to await resolution of the issue before continuing to open

a competing business).  For all these reasons, SV Sports has not shown a risk of immediate

irreparable harm if not granted injunctive relief to enjoin Defendants from soliciting, recruiting,

or employing any former employee of SV Sports or to enjoin Defendants from soliciting or

selling to SV Sports customers.

Second, although SV Sports asserts various types of harm it will suffer if its confidential

information is used or disclosed, it has offered no evidence that Snyder has any intention to

imminently disclose confidential information to the other Defendants or that Defendants have

any intention to imminently use SV Sports' confidential information.  *See Whitman*, 343 F. Supp.

3d at 523 ("[I]rreparable harm will not be presumed merely because the elements of a trade

secret claim have been satisfied.  Instead, a party seeking a preliminary injunction must make 'a

clear showing of immediate irreparable injury.'" (quoting *Campbell Soup Co. v. ConAgra, Inc.*,

977 F.2d 86, 92-93 (3d Cir. 1992)).  Rather, SV Sports relies merely on assumptions that

confidential information has been, is being, or will be disclosed, which do not make a "clear"

showing.  *See All. Life Scis. Consulting Grp., Inc. v. Fabriczi*, No. 17-864-CDJ, 2017 U.S. Dist.

LEXIS 132440, at *26-27 (E.D. Pa. Aug. 17, 2017) (refusing to issue a preliminary injunction

where the plaintiff's allegations that the defendants must be disclosing protected information was

merely an assumption and a fear that the defendant might disclose protected information at some

indeterminate time in the future).  The mere fact that Snyder works for CI, or that any other

former SV Sports' employee works for or intends to work for CI, is insufficient to show there is

a risk of imminent disclosure.  *See Cont'l Grp., Inc.*, 614 F.2d at 359 (vacating the district

court's preliminary injunction to enforce the nondisclosure covenant because the plaintiff's

former employee's employment in the plant of a competitor was not sufficient to pose a risk that

confidential information might be inadvertently disclosed).  Further, "[r]isk of harm if information is inadvertently disclosed [] is not sufficient to satisfy the standard for granting a preliminary injunction. There must be an imminent threat of the allegedly harmful disclosure." *Cont'l Grp., Inc.*, 614 F.2d at 358-59.  For all these reasons, SV Sports has failed to show imminent irreparable harm if a preliminary injunction to enjoin the solicitation, disclosure, or use of confidential information is not issued.  *See Whitman*, 343 F. Supp. 3d 509 (concluding that because the plaintiff failed to carry its burden of showing its former employee, who misappropriated trade secrets while working for the plaintiff and went to work for a competing company, had any intention to imminently use a trade secret or to disclose it to a competitor, no preliminary injunction would issue on the misappropriation of trade secret claim).

> **c.    Granting preliminary injunctive relief will result in greater harm to Defendants.**

Because SV Sports cannot meet the first two elements for injunctive relief, the harm to Defendants if injunctive relief is granted is necessarily greater.  *See Razor Tech., LLC v. Hendrickson*, No. 18-654, 2018 U.S. Dist. LEXIS 74918, at *30 (E.D. Pa. May 3, 2018) (concluding that because the plaintiff could not establish the first two elements of injunctive relief, it also could not show that "the balance of the equities favors prohibiting the further work of [the defendants] outweighs a possible but largely undefined claim").

Moreover, as previously discussed, SV Sports has not shown that the non-compete agreements are enforceable, nor provided any evidence (instead making unsupported factual leaps and conclusory statements) that it will lose customers and employees if injunctive relief is not granted.  It has also failed to provide any evidence that confidential information has, is, or will be disclosed or that it will suffer a loss to its reputation if Defendants are not enjoined.  SV Sports has offered no evidence that Snyder and the former SV Sports Sales Team members are

not complying with McGinnis' May 21, 2020 email ordering that they cease all actions on behalf of CI. *See Revzip, LLC*, 2019 U.S. Dist. LEXIS 211836, at *24 (concluding that "[i]n the absence of any showing that any party subject to an agreement not to compete is in fact competing. . ., the balance of the equities here favors allowing competition because there is no evidence that restraining any of Defendants will limit any potential harm to [the plaintiff]"). In the absence of any such showing, the balance of equities favors Defendants.

Further, even were the Court to find that the non-compete agreements are enforceable, Defendants' belief that they did not apply was reasonable. This distinguishes the case from those in which the harm to the defendants was self-inflicted and less worthy of protection. *See HR Staffing Consultants LLC v. Butts*, 627 F. App'x 168, 174 (3d Cir. 2015) (concluding that in the case of a willful breach, the equities tipped in favor of the former employer). *Accord Tantopia Franchising Co., LLC v. W. Coast Tans of PA, LLC*, 918 F. Supp. 2d 407, 420 (E.D. Pa. 2013) ("In balancing the hardships to the parties, any injury defendants might suffer as a result of the issuance of the preliminary injunction is significantly outweighed by the irreparable harm plaintiff would continue to suffer as a result of defendants' violation of the Non-Compete Covenant."). Here, it was SV Sports' decision to lay-off Snyder, without any guarantee that he would be rehired, that caused Snyder to seek outside employment. Having worked as a sales manager for a sporting goods retailer for more than thirty years, it was understandable why Snyder, who did not believe his non-compete agreement applied, would seek employment in a field in which he was knowledgeable. In light of the coronavirus pandemic and closing of non-essential businesses, employment opportunities were limited.

The harm to Snyder if an injunction is granted is great as he will once again be without a job and income. Although the stay-at-home orders issued by the Governor of the

Commonwealth of Pennsylvania ended on June 4, 2020, not all businesses are open.  The coronavirus shutdown is ending in three phases, county-by-county, based on the number of new cases.  Lehigh County[21] remains in the yellow phase, along with the entire Eastern District of Pennsylvania.  The likelihood of Snyder finding employment at this time is therefore reduced, especially if Snyder is enjoined from working with a competing company, which is the area in which he has the most experience.  According to the Bureau of Labor Statistics, the unemployment rates over the past few months are the highest in more than seventy years.  The harm to SV Sports, on the other hand, is much less given that it had laid Snyder off and he was not making any sales for SV Sports.

Similarly, because SV Sports laid-off the former members of SV Sports Sales Team and is not profiting from their sales, its harm is less than the harm that would be suffered by CI if enjoined from employing Snyder and the former members of SV Sports Sales Team.  CI will have to expend time and expense to find other employees, who may not have the same level of experience, and to reorganize the sales team envisioned in Snyder's April 18, 2020 email.  Also, CI is a much smaller company and the negative impact of an injunction will likely be felt more than by SV Sports if an injunction is denied.

Moreover, the injunction sought by SV Sports is overly broad in at least two respects.  First, SV Sports seeks to enjoin Defendants' competition and solicitation activities for a potentially longer period of time than that provided by the non-compete agreements.  The non-compete agreements apply for "a period of 1 year after the employee is no longer employed by

---

[21]     To date, Pennsylvania has the seventh largest number of reported cases in the United States.  *See* https://www.cdc.gov/covid-data-tracker/index.html.  Three of the states with larger numbers, New York, California, and Texas, have significantly larger populations then Pennsylvania.  Within Pennsylvania, the counties in the Eastern District have been most heavily impacted.

the Company."  *See* Exs. A-B, ECF No. 1-4, 1-5.  However, SV Sports seeks to enjoin Defendants for "a period of one (1) year after final disposition of this matter, including exhaustion of any and all appeals."  *See* PI Mot.  SV Sports admits Snyder was terminated no later than May 18, 2020, but because this case is still in the preliminary stages and may not be ready for trial until 2021, if any party files an appeal, the matter will likely still be pending on May 19, 2021.  Thus, the requested injunction would prevent Snyder from working with CI, or any other competitor of SV Sports, longer than the period to which he agreed.  Second, SV Sports seeks to enjoin all Defendants "from soliciting, distributing, offering to sell, or selling any products or services to SV Sports customers, from now and through and including a period of one (1) year after final disposition of this matter. . . ."  This request seeks to enjoin CI from doing something it is legally entitled to do: compete with SV Sports.  CI did not sign a non-compete agreement and SV Sports' attempt to prevent its competitor from being able to lawfully compete in the industry is unquestionably more harmful to CI.

Finally, as to SV Sports' request for injunctive relief to protect its confidential information, there is little risk of harm to CI if an injunction issues.  But, in the absence of any evidence that any Defendant has solicited, unlawfully obtained, or used/is using any confidential information, there is also little risk of harm to SV Sports if an injunction is not issued.

In total, the balance of equities overwhelmingly weighs in favor of Defendants.

### d.    The public interest does not favor injunctive relief.

Issuing a preliminary injunction where SV Sports failed to satisfy any of the first three elements would necessarily be against the public interest.  Moreover, if the non-compete agreements are enforceable, SV Sports has failed to show that granting a preliminary injunction is in the public interest.

There are several competing public interests at play in this case.  The public at large benefits by allowing companies to compete freely.  *See Vector Sec., Inc. v. Stewart*, 88 F. Supp. 2d 395, 401 (E.D. Pa. 2000).  "[A]s a matter of public policy, Pennsylvania courts are reluctant to 'enforce any contracts in restraint of free trade, particularly where they restrain an individual from earning a living at his trade.'"  *Coventry First, LLC v. Ingrassia*, No. 05-2802, 2005 U.S. Dist. LEXIS 13759, at *12 (E.D. Pa. July 11, 2005) (quoting *Insulation Corp. of Am. v. Brobston*, 667 A.2d 729, 733 (Pa. Super. 1995)).  "[T]here is a public interest in employers being free to hire whom they please and in employees being free to work for whom they please."  *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 119 (3d Cir. 2010) (citing *Renee Beauty Salons, Inc. v. Blose-Venable*, 652 A.2d 1345, 1347 (Pa. Super. Ct. 1995)).  "Nonetheless, it is generally in the public interest to uphold an agreement freely entered into by the parties."  *Ingrassia*, 2005 U.S. Dist. LEXIS 13759, at *12.  *See also Graphic Mgmt. Assocs. v. Hatt*, No. 97-CV-6961, 1998 U.S. Dist. LEXIS 3949, at *49 (E.D. Pa. Mar. 18, 1998) ("Restrictive covenants only have value if they are enforced.").  Though disfavored, "Pennsylvania courts recognize that 'covenants have developed into important business tools to 'allow employers to prevent their employees and agents from learning their trade secrets, befriending their customers and then moving into competition with them.'"  *Victaulic Co. v. Tieman*, 499 F.3d 227, 237 (3d Cir. 2007) (quoting *Hess v. Gebhard & Co.*, 808 A.2d 912, 918 (Pa. 2002)).  *See also Botticella*, 613 F.3d at 119 (holding that there is a public interest in protecting trade secrets and enforcing confidentiality agreements).

The Court recognizes the public interests in upholding enforceable contracts, preventing unfair competition, and protecting trade secrets.  However, because SV Sports has not shown that the non-compete agreements are enforceable, there is no evidence of "unfair" competition.

In the absence of any evidence that SV Sports' confidential information is being improperly used or disclosed, the public interest in preserving competition weighs in favor of denying the injunction that would significantly limit CI's ability to compete.  Moreover, in light of SV Sports' decision to lay-off Snyder and the former Sales Team members and of the fact they would be forced out of work when the country is facing the highest unemployment rates in more than seven decades, the public interest does not favor granting an injunction that would prevent these individuals from working for CI.

### C.    Expedited Discovery

SV Sports has failed to show good cause for expedited discovery.  Each of the factors a court should consider in deciding such a request weigh against ordering expedited discovery.  First, the motion for discovery was filed the same day the action was initiated.  SV Sports sought discovery before even serving its Complaint.  Further, as discussed, no preliminary injunction hearing will be scheduled and the request for injunctive relief, considered simultaneously with the motion for expedited discovery, is denied.  Second, the scope of the discovery request is extremely broad.  SV Sports seeks leave to depose all four Defendants and obtain essentially three months of communications between the four Defendants and more than half-a-dozen individuals.  Finally, the burden on Defendants is extreme.  SV Sports filed the motion seeking extensive documentary evidence and leave to depose all Defendants before even satisfying its own service requirements under Rule 4.  Although service is now complete, Defendants have not answered the Complaint or filed any 12(b)(6) motions, if any.  SV Sports' assertion that the "discovery will need to be produced by Defendants in this litigation anyway" is therefore only an assumption and, regardless, it has no bearing on whether its request for expedited discovery is reasonable.  Finally, SV Sports' suggestion Defendants are trying to "hide the relevant facts and

documents" because they oppose a request for expedited discovery brought the very day civil proceedings were initiated is completely unfounded.

## VI.    CONCLUSION

There is no need for a hearing on the preliminary injunction motion because SV Sports has presented all its evidence in support of the motion, which is largely undisputed.  SV Sports has failed to show a likelihood of success on the merits of any of its claims or that it will suffer imminent irreparable harm if injunctive relief is not granted.  Moreover, the balance of equities weigh against injunctive relief and the public interest does not favor an injunction.  Finally, SV Sports' motion for expedited discovery, brought the same day the instant action was filed, is overly broad and burdensome, and by no means reasonable under the circumstances.

A separate Order follows.


BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR.
United States District Judge